*W. R. Hough,* for appellants.

------------●------------

### VANNOY and Another *v.* BLESSING and Others.

SINKING FUND MORTGAGE.—*Sale by Mortgagor after Property was Bid in by the State.—Purchase from the State.—Adverse Possession.—Favored Purchaser.—Warrant for Possession.—Occupying Claimants.*—Certain real estate was mortgaged to the Sinking Fund of the State of Indiana, in 1854, and on default in the payment of interest and principal, in 1862, was bid in by the State, and A., the mortgagor, subsequently sold the property to B. and executed a deed for the same on the 3d day of June, 1869, he and his assigns remaining in possession of the property to the present time; and on the 5th day of June, 1869, the Auditor of State sold and conveyed the property to C., who gave notice to B. to surrender the premises and, on his failure to do so, procured a warrant from the Auditor of State, directing the sheriff of the county, where the land was situated, to put C. in possession, and B. thereupon applied for an injunction, alleging that he had made valuable improvements on the land and had been in adverse possession of the same when the sale was made by the Auditor.

*Held,* that the possession of the mortgagor and of his grantee was not adverse.

*Held,* also, that the right of a grantee from the mortgagor to be favored in the purchase only continued for six months after the land was bid in by the State, and the decision of the Auditor among such applicants to purchase was final.

*Held,* also, that the warrant issued by the auditor was authorized by law.

*Held,* also, that the statute on the subject of " occupying claimants " has no application to this case, and the mortgagor or his grantee can claim no benefit from the same.

APPEAL from the Judge of the Shelby Circuit Court.

WORDEN, C. J.—A complaint was filed below in vacation, by the appellees against the appellants, one of the latter, Hoop, being the sheriff of said county. The complaint alleged, in substance, the following facts, viz:

That in the year 1854, Martin M. Ray, who was then the

owner of the property, mortgaged a certain described part of a lot in the town of Shelbyville, in said county, to the sinking fund of the State of Indiana, for the sum of three hundred dollars, which property was bid in by the State, in the year 1862, for non-payment of principal and interest; the property, however, remaining in the continued and adverse possession of Ray and those claiming under him, from the time of the execution of the mortgage down to the time of the bringing of the action; that on the 3d of June, 1869, the said Ray having previously sold the property to said plaintiffs, Blessing and Sayler, conveyed the same to them; that lasting and valuable improvements have been made upon the property by those claiming under Ray, of the value of fifteen hundred dollars; that on the 5th of June, 1869, the defendant, Vannoy, secretly and clandestinely, and without the knowledge of any of the plaintiffs, and with the intent to cheat and defraud the said mortgagor, and without his knowledge, as the plaintiffs were informed and believed, and in fraud of the rights of said Blessing and Sayler to become the favored purchaser of said property, made a pretended purchase of said property at private sale from the Auditor of State, and obtained a deed for said property, as they are informed and believe, under the provisions of an act of the General Assembly of the State of Indiana, approved January 13th, 1845, but as they have neither the original nor a copy of the deed, they cannot furnish a copy; that on the 10th of June, 1869, the said Vannoy served a notice to quit, on Pierce, who was in possession, as tenant to said Blessing and Sayler, and who joins as plaintiff in virtue of said tenancy, a copy of which notice is filed; that on the 11th of June, 1869, the said Vannoy, with the same fraudulent purpose, obtained a warrant or order, from the Auditor of State, a copy of which is filed, directed to said sheriff, requiring him to remove said Pierce from the premises within ten days.

The object of the action is to enjoin the service of said warrant.

The plaintiffs, Blessing and Sayler, claim:

First, that the deed from the Auditor of State is void as against them, because they purchased the property as aforesaid, and have been since their said purchase, by themselves and tenants, in the actual, continued, and adverse possession of the property, down to the time of bringing the action.

Second, they claim as *bona fide* purchasers for value, under the mortgagor, Martin M. Ray, the right of becoming preferred or favored purchasers of the lot thus bid in by the State and wrongfully sold to Vannoy.

Third, they claim that the warrant from the Auditor of State is unauthorized by law, because Vannoy claims under a deed and not under a certificate of purchase.

The plaintiffs also insist that they cannot be dispossessed, under the occupying claimant law, until their claim for improvements shall have been adjusted.

On this complaint, on the 14th day of June, 1869, a temporary restraining order was granted until the 1st of July, 1869, at which time the parties appeared, and the plaintiffs moved to continue the restraining order until the final hearing; the defendants filed a demurrer to the complaint, which was overruled, and the plaintiffs' motion sustained, the defendants excepting.

We have no brief on behalf of the appellees, and can, therefore, only conjecture the ground on which the injunction or restraining order was granted, or the argument that might be advanced to sustain the same. We proceed to examine the several positions thus assumed in the complaint.

We pass the question, whether the possession of a mortgagor or those claiming under him can, in any case, be deemed to be adverse to the mortgagee or those claiming title by virtue of a sale made under the mortgage, and proceed to inquire whether such possession, assuming it to be adverse, can render such sale as that under consideration void. In the case of *McGill* v. *Doe*, 9 Ind. 306, it was held that judicial sales were not affected by adverse possession, not being within the policy of the champerty law. In the case above cited, a passage from a note to Kent's Com. is quoted, to the

effect that neither judicial nor official sales are within the policy of the champerty law, and it is added that the court approves and follows the authorities thus quoted. The case of *McGill* v. *Doe* was followed in the case of *Webb* v. *Thompson*, 23 Ind. 428, where the court correctly remark that "it is not the inclination of the courts of this country to carry the doctrine of champerty any further than it has already gone."

There is as little reason for applying the doctrine of champerty to sales of the kind under consideration as to judicial sales. Indeed, it would be quite detrimental to the public interests to apply the doctrine to such cases. Of course a sale of land on a mortgage to the sinking fund, for non-payment of the money borrowed, could only vest the purchaser with whatever title the mortgagor had in the premises. Such sale could not affect the title of a third party, not acquired through the mortgagor since the execution of the mortgage, in other words, a title valid in itself and adverse to the mortgagor.

If the State were required first to acquire possession, where the land might be held adversely, before sale could be made, it would greatly embarrass and impede the collection of the fund; and we think such course is not contemplated by the statutes on the subject of that fund.

The first objection made in the complaint to the title of Vannoy is not well taken.

We come to the second point, in which the plaintiffs claim the right of becoming preferred or favored purchasers of the lot.

It is provided by sections three and four, of an act approved January 13th, 1845, Acts 1845, page 19, as follows, viz:

Sec. 3. "After the lapse of six months, any person having a *bona fide* title claiming under such mortgagor, or any *bona fide* junior mortgagor or junior incumbrance, shall have the privilege of becoming a favored purchaser of the whole or any portion of the premises covered by any mortgage foreclosed and bid in by the State as aforesaid, according to

Vannoy and Another *v.* Blessing and Others.

priority of mortgage or other equity; and in case of several applications to purchase, or in case of conflict between applicants in regard to such privilege, the president and commissioners of the sinking fund shall have power to determine the same, whose decision in the premises shall be final."

Sec. 4. "After the expiration of said six months, any and all lands and lots bid in by the State as aforesaid, and which have been once offered at public sale, shall be subject to private sale at the sinking fund office at Indianapolis, on a credit of five years, the interest to be paid annually, in advance, and the land to forfeit and revert to the State, for any default of payment according to the terms of purchase."

The third section above quoted is believed to have been in force at the time of the sale made by the auditor to Vannoy, and is yet in force so far as we are advised, except that the duties, therein directed to be performed by the president and commissioners of the sinking fund, are transferred to the Auditor of State, by the first section of the act approved March 11th, 1867 (3 Ind. Stat. 487).

The fourth section above quoted is so far modified by the eighth section of the act of March 11th, 1867, as that all sales thereafter of lands, forfeited by reason of non-payment of any loan, were required to be made for cash only.

We have set out sections three and four of the act of 1845, as they originally stood, in order the better to ascertain their meaning. We think, taking the two sections together, that where there are conflicting applications to purchase by persons claiming the privilege provided for, the decision between them of the president and commissioners of the sinking fund, and under the later act the decision of the Auditor of State is final; and that after the expiration of six months, and the lands have been offered at public sale, and there is no application from any one claiming the privilege to become such favored purchaser, the lands may be rightfully sold to any person who will buy on the terms prescribed by law.

VOL. XXXVI.—23

It appears by the case made in the complaint, that the lot was bid in by the State in 1862, and that it was not sold to Vannoy until 1869, making a period of about seven years. It does not appear that the plaintiffs, or any one under whom they claim, at any time, ever made any application whatever to become the purchasers of the lot, whether as favored or otherwise; nor does it appear that the lot had not been offered at public sale; nor indeed is any reason shown why the sale by the auditor was not in strict accordance with the law.

There is no foundation for the second point made by the plaintiffs.

We now consider the third. This is, that the warrant is unauthorized, because Vannoy claims under a deed and not under a certificate of purchase.

The eighth and ninth sections of the act of 1845, provide for the removal of the occupant of land forfeited to the State for failure to pay, and also where the land has been sold and the purchaser holds a certificate of purchase, by means of a warrant from the auditor; but this act has nothing to do with the question under consideration. We have already seen that by the act of March 11th, 1867, all sales of forfeited lands, thereafter to be made, were to be made for cash only; and by the first section of the same act, the Auditor of State is authorized to make deeds of lands sold by the commissioners of the sinking fund, or thereafter to be sold by him.

The ninth section of the act of May 4th, 1852, (1 G. & H. 420) provides for the removal of the occupant of land, where the principal or interest due on land mortgaged shall be unpaid, by means of a warrant from the Auditor of State, directed to the sheriff of the county in which the lands lie; and the twelfth section of the same act provides that the purchaser of lands sold by the State for failure to pay principal or interest shall have the same remedy. Thus it is seen that the warrant was duly authorized by law.

The last point made is in relation to the claim of the plaintiffs for improvements.

The statute on the subject of "occupying claimants" (2 G. & H. 285) can have no application whatever to cases like the present. Its terms utterly exclude such application. In the first place, it is only where the party making the improvements has been found, "in a proper action," not to be the owner of the property, that the remedy provided for can be applied; secondly, under this statute, the plaintiff in the main action may pay the value of the improvements, deducting the rents, profits, and damages, and take the property; or in default of such payment, the defendant may keep the property upon paying the value of the land, aside from the improvements. No machinery is provided for carrying out these provisions in a case where the purchaser from the State of lands mortgaged to the. sinking fund is put in possession by means of a warrant from the auditor; thirdly, neither the mortgagor nor those claiming under him, with actual or constructive notice of the mortgage, can claim the benefit of improvements made by them as against a party having a title by virtue of a sale under the mortgage.

We see no valid objection to the title of Vannoy, nor any reason why the warrant from the Auditor of the State should not be executed, and are of opinion that the judge below erred in granting the restraining order on the case made by the complaint.

The order of the judge granting the restraining order is reversed, with costs, and the cause remanded.

*J. Gavin* and *J. D. Miller*, for appellants.